ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>HECTOR DOMINGUEZ<br><br>    Defendant. | CASE NO. CR 23-436 AMO<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: November 4, 2024<br>Time: 2:00 p.m.<br>The Honorable Araceli Martínez-Olguin |

## I.   INTRODUCTION

For well over a year, Hector Dominguez made his living selling fentanyl in the Bay Area. Despite numerous arrests by the local authorities for his drug dealing activities, Mr. Dominguez continued to peddle this dangerous drug on the streets of San Francisco and Oakland. In fact, his drug dealing was so prolific, two separate teams within the Drug Enforcement Agency (DEA) identified Mr. Dominguez and began investigating his conduct. From February 2022 through his arrest in June of 2023, Mr. Dominguez sold close to two pounds of fentanyl to undercover agents with the DEA. And, during that same time frame, Mr. Dominguez was arrested on three entirely separate occasions by the San Francisco Police Department for drug dealing activities in the Tenderloin District.

As discussed in greater detail below, the frequency of Mr. Dominguez's drug dealing activities is

what stands out as this Court considers the appropriate sentence to render in this case. From a pure deterrence standpoint, the choices Mr. Dominguez made throughout 2022 and 2023 justify a substantial punishment to prevent him from returning to a life of drug dealing. In what follows, the government explains why a 60-month term of incarceration appropriately punishes Mr. Dominguez's choices and satisfies the sentencing goals laid out in 18 U.S.C. § 3553(a).

## II. PROCEDURAL HISTORY

On July 6, 2023, a criminal complaint was signed by the Honorable Kandis A. Westmore, Magistrate Judge for the Northern District of California, charging Mr. Dominguez with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Distribution of Fentanyl. *See* Dkt. 1. The charge stemmed from Mr. Dominguez's sale of fentanyl to an undercover DEA agent on March 2, 2023. Mr. Dominguez was arrested and brought to Magistrate Court for an initial appearance on July 19, 2023. *See* Dkt. 5. At that time, Mr. Dominguez was ordered remanded to the custody of the United States Marshal Service. *Id.*

On November 24, 2023, the government filed an Information charging Mr. Dominguez with three separate violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Distribution of Fentanyl. *See* Dkt. 18. The three counts related to Mr. Dominguez's sale of fentanyl to an undercover DEA agent on March 2, 2023, April 10, 2023, and June 9, 2023. *Id*. On November 27, 2023, Mr. Dominguez was arraigned on the Information and waived his right to proceed with an indictment. *See* Dkts. 19, 20. On February 26, 2024, pursuant to a plea agreement with the government, Mr. Dominguez entered a guilty plea to Count One of the Information. *See* Dkts. 27, 28. Mr. Dominguez's guilty plea was entered pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The matter was set for a sentencing date of May 31, 2024. That date was ultimately continued to November 4, 2024 after Mr. Dominguez obtained new counsel. *See* Dkts. 39, 43.

## III. FACTS

At the end of February 2022, law enforcement agents with DEA San Francisco were made aware of a major fentanyl supplier operating in the Tenderloin District of San Francisco. Presentence Report (PSR) ¶ 6. Using an undercover agent (UC), the DEA made contact with Mr. Dominguez and arranged to purchase fentanyl from him on March 2, 2022, March 22, 2022, and April 21, 2022. PSR ¶ 7. On

March 1, 2022, the UC arranged, via text message, to purchase four ounces of fentanyl from Dominguez for $2100. PSR ¶ 8. That four-ounce fentanyl deal eventually occurred on March 2, 2022 in Oakland, California. *Id*. On March 21, 2022, the UC again arranged to purchase four ounces of fentanyl from Mr. Dominguez for $2100. That four-ounce fentanyl deal occurred on March 22, 2022, again in Oakland. PSR ¶ 9. On April 20, 2022, the UC arranged to purchase yet another four ounces of fentanyl from Mr. Dominguez. PSR ¶ 10. That drug deal occurred on April 21, 2022. *Id*. After the UC requested two more ounces of fentanyl from Mr. Dominguez, Mr. Dominguez messaged the UC and said he was no longer going to sell fentanyl. *Id*. Agents suspect that Mr. Dominguez realized he had been dealing with an undercover law enforcement agent as he then terminated any contact with the UC. *Id*.

Separately, in November of 2022, DEA Oakland received information from a confidential informant that Mr. Dominguez was an active fentanyl dealer in the Tenderloin District. PSR ¶ 11. As a result, DEA Oakland had their own undercover officer (UC) reach out to Mr. Dominguez. *Id*. On March 2, 2023, this new UC was able to contact Mr. Dominguez and arrange the purchase of four ounces of fentanyl for $800. PSR ¶ 12. The UC met with Mr. Dominguez that same day in Oakland. *Id*. During their encounter, Mr. Dominguez provided the UC with five separate bags of fentanyl of various colors in exchange for $800. PSR ¶ 13. The fentanyl Mr. Dominguez sold was determined to weigh 126.3 grams net. PSR ¶ 14.

On April 9, 2023, the UC again arranged to purchase four ounces of fentanyl from Mr. Dominguez. PSR ¶ 15. The two met that afternoon at which time Mr. Dominguez sold the UC the four ounces for $800. PSR ¶ 16. After the deal, the UC asked Mr. Dominguez if he could get an additional four ounces of blue fentanyl. PSR ¶ 17. Mr. Dominguez made a phone call and told the UC that he needed an hour to obtain the additional drugs. *Id*. A surveillance team watched as Mr. Dominguez traveled to a residence on Bancroft Avenue in Oakland where he remained inside for almost an hour. PSR ¶ 18. After exiting the residence, Mr. Dominguez returned to the initial location of the drug deal. *Id*. When Mr. Dominguez returned, he handed the UC the additional four ounces of fentanyl. PSR ¶ 19. The drugs from this deal were determined to weigh a total of 225 grams net of fentanyl. PSR ¶ 20.

On June 8, 2023, the UC again reached out to Mr. Dominguez to arrange a fentanyl deal. PSR ¶ 21. On June 9, 2023, Mr. Dominguez agreed to conduct a drug deal with the UC for four ounces of fentanyl and the two arranged to meet at 82nd Avenue and Bancroft in Oakland that same day. *Id.* The drug deal successfully occurred later that day inside the UC's vehicle. *Id.* The drugs Mr. Dominguez sold on June 9, 2023 were determined to weigh 112.534 net grams of fentanyl. PSR ¶ 22.

Mr. Dominguez was arrested pursuant to a criminal complaint and arrest warrant, at his apartment in Oakland, on the morning of July 18, 2023. PSR ¶ 23. He was then brought to Magistrate Court where he appeared on the charges.

## IV. SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's finding that Mr. Dominguez is responsible for the fentanyl he distributed on six different occasions across 2022 and 2023. PSR ¶¶ 24, 33. As a result, the Base Offense Level for the drug distribution offense is properly calculated at 30. PSR ¶ 30. The government agrees that Mr. Dominguez should be provided a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility. PSR ¶¶ 39, 40. The government further agrees that Dominguez has a criminal history score of four, resulting in Criminal History Category III. *Id.* ¶¶ 49, 50.

Based upon a total offense level of 27 and a criminal history category of III, the guidelines imprisonment range is 87-108 months.

### A. Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a);

*Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

### B. Recommended Sentence

The government agrees that there are circumstances that merit consideration by this Court pursuant to 18 U.S.C. § 3553(b)(1). Namely, the government acknowledges Mr. Dominguez's difficult upbringing and challenging circumstances. PSR ¶¶ 59-63. In addition to losing his father and mother at a young age (PSR ¶ 59, 60), Mr. Dominguez was raised in financially dire circumstances. PSR ¶ 61. Importantly, Mr. Dominguez is a father to a young son and has suggested supporting this child is his focus. PSR ¶ 64. Indeed, Mr. Dominguez has (or should have) a strong incentive not to engage in further criminal conduct given his responsibility towards his child and now that he is fully aware of the seriousness of his drug dealing. Finally, Mr. Dominguez's criminal history score appears to be overstated as his prior convictions are almost 10 years old and did not result in substantial terms of incarceration. In light of Mr. Dominguez's difficult background, and young family, as well as the age of his prior convictions, the government believes that a below-Guidelines sentence is appropriate here.

Nevertheless, Mr. Dominguez's recent criminal history suggests previous judicial intervention has done nothing to deter his criminal conduct. Around the same time he was selling fentanyl to two different undercover law enforcement agents, Mr. Dominguez was arrested numerous times by the San Francisco Police Department for dealing drugs in the Tenderloin District of San Francisco – a neighborhood especially impacted by the fentanyl crisis and plagued daily by numerous drug dealers preying on the drug users of the city. On January 10, 2023, for example, Mr. Dominguez was arrested, after appearing to engage in drug sales activities, and found to be in possession of fentanyl, heroin, cocaine base, Alprazolam, and a digital scale. PSR ¶ 54. Just a few months later, on April 21, 2023, Mr. Dominguez was identified by a 911 caller as someone who sells drugs in the Tenderloin District every day. PSR ¶ 55. Officers detained Mr. Dominguez and recovered methamphetamine, fentanyl, alprazolam, cocaine base, and a digital scale on his person. *Id*. Then, a mere week late on April 28,

2023, Mr. Dominguez was arrested after engaging in what officers suspected was a hand-to-hand drug transaction, again in the Tenderloin District of San Francisco. PSR ¶ 56. During a search of Mr. Dominguez, officers found cash, a digital scale, fentanyl, heroin, and methamphetamine. *Id*.

Importantly, from a sentencing standpoint, during the April 28, 2023 arrest, Mr. Dominguez was determined to have an active stay away order from the location of his arrest. PSR ¶ 56. Very clearly, from a specific deterrence standpoint, judicial intervention, including arrests and stay away orders, have done nothing to stop Mr. Dominguez from reverting to a life of drug dealing. In fact, even when he suspected the DEA undercover agent was law enforcement back in April of 2022 (*see* PSR ¶ 10), and he cut ties with that particular buyer, Mr. Dominguez still continued to deal fentanyl to others. These decisions are the most troubling – Mr. Dominguez made the specific choice, full well knowing the seriousness of his conduct, to continue to peddle drugs to the detriment of the Bay Area community. For these reasons, even if the Court considers the mitigating factors present in this case, a substantial period of incarceration is necessary to stop Mr. Dominguez from disobeying the law yet again and returning to the life of a drug trafficker.

Under 3553(a), general deterrence must also play a determination in this Court's decision. However difficult his circumstances, Mr. Dominguez had a *choice*, just like the many others who came from similar backgrounds who chose *not* to turn to criminality. Even as he sought to support himself and his family, his decision to distribute fentanyl was a selfish one that added to the persistent and devastating misery in our communities. His sentence must therefore serve the goal of general deterrence, as an example for anyone else who might consider making the same calculation, to show that crime simply does not pay.

With all of that said, the Court must balance the very clear need to punish and deter Mr. Dominguez with the mitigating factors discussed above. Considering Mr. Dominguez's tough upbringing, young family and overstated criminal history score, framing Mr. Dominguez's sentence within the range for Criminal History Category I might be an appropriate barometer for this Court. At an offense level 27, and a Criminal History Category I, Mr. Dominguez's Guidelines would be calculated at 70-87 months. The government agrees that a slight downward variation from this range is

appropriate, given the mitigating circumstances addressed. Nevertheless, a custodial term of 5 years, or 60 months, strikes the appropriate balance between that mitigation and the seriousness of Mr. Dominguez's conduct.

For these reasons, the government believes that the Court should impose a sentence of 60 months' imprisonment. Such a sentence satisfies the factors enumerated in 18 U.S.C. § 3553(a) by acknowledging the harm Mr. Dominguez has caused and making it clear to the community that those who contribute to the blight facing the Bay Area by participating in the drug trade will be seriously punished.

### V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Mr. Dominguez to a sentence of 60 months of imprisonment on Count One. The government also requests that the Court impose a three-year term of supervised release, with each of the terms and conditions recommended by U.S. Probation.

DATED: October 28, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
Attorney for the United States

/s/
CHARLES F. BISESTO
Assistant United States Attorney